FILED

2012 NOV 20  PM 1:58

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY_____

1   GREENBERG TRAURIG, LLP
2   Ginger Pigott (SBN 162908)
    Amy B. Alderfer (SBN 205482)
3   Email: pigottg@gtlaw.com; alderfera@gtlaw.com
    1840 Century Park East, Suite 1900
4   Los Angeles, CA  90067
    Tel: (310) 586-7700; Fax: (310) 586-7800
5   Attorneys for Defendant Teva Pharmaceuticals USA, Inc.

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10             ED CV12-02039VAP(DTBx)

11                                      CASE NO.: _____

12  SHIRLEY THOMAS, a single
    individual; BARBARA MCKISKI,
13  individually and as next of kin to
    KENNETH MCKISKI, deceased;
14  ANGEL MCMILLIAN, individually and
    as next of kin to TERRY L.               NOTICE OF REMOVAL BY
15  MCMILLAN, deceased;                       DEFENDANT TEVA
16  KRISTINE MORGAN, individually and         PHARMACEUTICALS USA,
    as next of kin to DENNIS WAGNER,          INC.UNDER 28 U.S.C. §§ 1331,
17  deceased; YVONNE MOSS, individually       1332, 1367, 1441, 1446, AND 1453
    and as next of kin to STEVEN W. MOSS,
18  deceased; WARREN NOEL, individually
19  and as next of kin to MARY NOEL,
    deceased; LINDA PHILLIPS,
20  individually and as next of kin to
    BOBBY L. PHILLIPS, deceased;
21  MARTHA PROCTOR, individually and
22  as next of kin to
    MICHAEL R. PROCTOR, deceased;
23  TINA RAINE, individually and as next
    of kin to RONALD RAINE, deceased;
24  ROCKY RAMER, individually and as
25  next of kin to GLENYS RAMER,
    deceased; JAMES RICHARDSON,
26  individually and as next of kin to
27  BARBARA RICHARDSON, deceased;
28  PATRICK ROBINSON, individually and

                          1
                  NOTICE OF REMOVAL

ATL 18,835,115_3

CONFORM THIS COPY

as next of kin to BRANDY ROBINSON, deceased; SANDRA ROBINSON, individually and as next of kin to DANIELLE SCARBROUGH, deceased; KAY ROLLER, individually and as next of kin to CHARLES ROLLER, deceased; JAMES ROSS, individually and as next of kin to MARIE THORPE, deceased; BARBARA SAVAGE, individually and as next of kin to AMBERLEE KAE MURPHY, deceased; NONA SEALS, individually and as next of kin to CHARLES RAY SEALS, deceased; WILLIAM SHEPPARD, individually and as next of kin to EDDIE M. SHEPPARD, deceased; MARGARET SHERRY, individually and as next of kin to ANTHONY SHERRY, deceased; TAMMY SHORE, individually and as next of kin to MARK D. SHORE, deceased; LINDA SIMONS, individually and as next of kin to THOMAS SIMONS, deceased; SUSAN SNODGRASS, individually and as next of kin to FRANKLIN BAIR, deceased; ANETRA SNYDER, individually and as next of kin to ELIZABETH PIERCE, deceased; BARBARA STEWART, individually and as next of kin to TERRY W. STEWART SR., deceased; GLADYS STONE, individually and as next of kin to GILMER D. STONE, deceased; ELISABETH STRAUSS, individually and as next of kin to CLARA HENDREN, deceased; LINDA SUDDUTH, individually and as next of kin to JAMES STEVENSON, deceased; MARGARET TAYLOR, individually and as next of kin to CHARLES E. TAYLOR, deceased; SARAH TUOHY, individually and as

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2

NOTICE OF REMOVAL

next of kin to SAMUEL WILLIS,
deceased;
SHIRLEY VANZYVERDEN,
individually and as next of kin to
JOHNNIE PAUL PARTIS, deceased;
ARTHUR WHITE, individually and as
next of kin to KAREN M. WHITE,
deceased;DONNA WHITE, individually
and as next of kin to EARL WHITE,
deceased; SAMANTHA WHITE,
individually and as next of
kin to JAMES SHELTON, deceased;
KRISTEN WILLIAMS, individually and
as next of kin to CAROL ANTHONY,
deceased; BILLIE JO WINNER,
individually and as next of
kin to BARBARA L. CLARK, deceased;
BILLIE JO WINNER, individually and
as next of kin to CARLTON J. CLARK,
deceased; PATRICIA WOMACK,
individually and as next of kin to
CHAUNCEY WOMACK, deceased;
LINDA WOOD, individually and as
next of kin to THOMAS WOOD,
deceased; and, SHEILA YANCEY,
individually and as next of kin
to SARITA DURDEN, deceased;

      Plaintiffs,

v.

MCKESSON CORPORATION; ELI
LILLY AND COMPANY;
AAIPHARMA, INC; AAIPHARMA
LLC; AAI DEVELOPMENT
SERVICES, INC.; NEOSAN
PHARMACEUTICALS INC;
XANODYNE PHARMACEUTICALS,
INC.; QUALITEST
PHARMACEUTICALS, INC.;
VINTAGE PHARMACEUTICALS,
INC.; PROPST DISTRIBUTION, INC.;
BRENN DISTRIBUTION, INC.;
BRENN MANUFACTURING, INC.;

3

ATL 18,835,115_3

VINTAGE PHARMACEUTICALS, )
LLC; GENERICS INTERNATIONAL )
(US), INC.; GENERICS BIDCO I, )
LLC; GENERICS BIDCO II, LLC; )
GENERICS INTERNATIONAL (US )
PARENT), INC.; ENDO )
PHARMACEUTICALS, INC.; ENDO )
PHARMACEUTICALS HOLDINGS )
INC.; CORNERSTONE )
BIOPHARMA, INC.; )
CORNERSTONE BIOPHARMA )
HOLDINGS, INC.; TEVA )
BIOPHARMACEUTICALS, INC.; )
TEVA PHARMACEUTICALS USA, )
INC.; MYLAN )
PHARMACEUTICALS, INC., )
MYLAN, INC.; COVIDIEN PLC; )
COVIDIEN INC.; MALLINCKRODT )
INC.; WATSON )
PHARMACEUTICALS, INC., )

and DOES 1 through 50, inclusive, )

            Defendants.

---

NOTICE OF REMOVAL

ATL 18,835,115_3

1   Defendant Teva Pharmaceuticals USA, Inc. ("Removing Defendant") hereby
2   removes to this Court the state court action described below.  Removal is warranted
3   under 28 U.S.C. §§ 1441(b), 1446, and 1453 because this is a civil action over which
4   this Court has original jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1367.  In
5   support of removal, Removing Defendant states as follows:

6   <u>**BACKGROUND**</u>

7   1.   On or about November 13, 2012, Plaintiffs commenced this action by
8   filing a complaint in the Superior Court of Riverside County, in the State of
9   California, bearing case number RIC1216707.  Plaintiffs are 39 individuals (38 of
10  which allege claims individually and as personal representatives of deceased
11  individuals) who allege cardiovascular injuries as a result of ingestion of prescription
12  pain medications containing the active ingredient propoxyphene.  (*See* Ex. A, Compl.
13  ¶¶ 1, 90.)[1]  Plaintiffs improperly fail to allege where any of them reside (except to
14  state that Plaintiff Shirley Thomas is a resident of this State (*id.* ¶ 14)), which form of
15  propoxyphene they took, which Defendant manufactured it, or what cardiovascular
16  injury they allegedly experienced.

17  2.   Plaintiffs assert claims against numerous entities they allege are or were
18  involved in the manufacture of brand name and generic prescription pain medications
19  containing propoxyphene (*id.* ¶¶ 25-89) and also against one purported distributor of
20  prescription medications, McKesson Corporation ("McKesson").  (*Id.* ¶¶ 18-24.)
21  Plaintiffs seek to recover compensatory and punitive damages against all Defendants
22  under numerous legal theories, including that the entities allegedly involved in the
23  manufacture of generic prescription medications containing propoxyphene (the
24  "Generic Defendants") have improperly breached their duty to use the same FDA-
25  approved labeling as the brand companies.  (*See id.* ¶¶ 5-7.)

26

27

28   [1] All exhibits referenced herein are attached to the accompanying declaration
of Amy B. Alderfer.

ATL 18,835,115_3

3.     The instant action is one of more than twenty multi-plaintiff lawsuits alleging injuries from ingestion of propoxyphene-containing pain products filed from approximately November 9, 2012 to November 16, 2012, in numerous California counties.[2] These lawsuits join the seven other lawsuits alleging injury resulting from ingestion of propoxyphene pain products filed in Los Angeles and San Francisco Counties in late 2011 and early 2012.

4.     On October 23, 2012, attorneys from Khorammi, LLP (Oakland, CA), Davis & Crump PC (Gulfport, MS), The Sill Law Group PLLC (Edmond, OK) and Pearson Randall & Schumacher, PA (Minneapolis, MN)  ("Coordination Counsel") filed a petition with the California Judicial Counsel to establish a coordinated proceeding before a single trial judge for California state-court products liability actions alleging personal injuries due to prescription pain medications containing propoxyphene.  (*See* Ex. B, Pet. for Coord.)  In support of the Petition, Coordination Counsel claims that "[o]ne judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice."  (Ex. C, Mem. in Support of Pet. for Coord. at 8.)

5.     The Petition for Coordination specifically identifies the seven "original" actions described in paragraph 3 above, which embrace the claims of more than 100 individual Plaintiffs, and specifically states that Coordination Counsel intends to include in the coordination additional, then-unfiled claims.  (*Id.*)  Significantly, subsequent to the filing of the Petition for Coordination, Elise Sanguinetti, whose firm Khorarmi LLP serves as Coordination Counsel and who submitted a declaration in support of the Petition for Coordination, has moved to stay the seven "original" actions pending a ruling on coordination, stating that "[c]oordination of all the California Propoxyphene cases makes sense."  (*See* Ex. E., Mem. in Supp. of Mot. to

---

[2] A Notice of Pendency of Other Actions or Proceedings and a Notice of Related Cases are both filed concurrently herewith.  Removing Defendant will amend and/or supplement the same when it learns of new information about the various actions filed throughout California.

ATL 18,835,115_3

1   Stay at 4, *Freitas v. McKesson Corp.*, No. CGC 11-515537 (Cal. Super. Ct. S.F.

2   County Nov. 9, 2012.)  Thus, the Petition now embraces the claims of more than 500

3   individuals.  (*See supra* note 2.)

4        6.        As set forth more fully below, this case is properly removed to this

5   Court pursuant to 28 U.S.C. § 1441 because there is federal jurisdiction on three

6   independent grounds — (a) as a mass action, pursuant to 28 U.S.C. § 1332(d)(11); (b)

7   under federal question and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331

8   and 1367; and (c) as an action between citizens of different states in which the

9   amount in controversy exceeds $75,000, pursuant to 28 U.S.C. § 1332(a) — and

10  Removing Defendant has satisfied the procedural requirements for removal set forth

11  in 28 U.S.C. §§ 1446 and 1453.

12                    **THIS CASE IS REMOVABLE AS A MASS ACTION**

13       7.        This case is removable pursuant to the mass action provisions of the

14  diversity jurisdiction statute.  28 U.S.C. § 1332(d)(11).  An action is removable as a

15  mass action where it meets the following requirements:

16              a.        It involves the monetary relief claims of 100 or more persons that

17              are proposed to be tried jointly on the ground that the plaintiffs' claims

18              involve common questions of law or fact, *see id.* § 1332(d)(11)(B)(i);

19              b.        The aggregate amount in controversy exceeds $5,000,000 and the

20              claims of the individual plaintiffs each exceed the amount of $75,000,

21              *see id.* §§ 1332(a), (d)(2), (d)(11)(B)(i); and

22              c.        Any plaintiff is a citizen of a State different from any defendant,

23              *see id.* § 1332(d)(2)(A).

24       8.        As set forth below, this action and the other propoxyphene actions

25  embraced by the Petition for Coordination satisfy all the jurisdictional requirements

26  for a mass action.  In addition, Removing Defendant has satisfied all procedural

27  requirements for removal of a mass action pursuant to 28 U.S.C. §§ 1446 and 1453.

28  Accordingly, mass action removal is proper.

7

A.   **The Petition for Coordination Proposes Joint Trial of the Claims of 100 or More Persons**

9.   This action is removable as a mass action because the Petition for Coordination proposes to try this case jointly with numerous other propoxyphene actions embracing the claims of more than 500 individuals. (*See* Pet. for Coord. at 3-7.)  As the Seventh Circuit recently held in *In re Abbott Laboratories, Inc.*, No. 12-8020, 2012 WL 4875584 (7th Cir. Oct. 16, 2012) (to be published in F.3d), a petition for state-court coordination of individual actions may render those actions a "mass action" for purposes of removal where, as here, the coordination petition proposes joint trial of the individual actions. *See id.* at *1.  And while a mass action does not result where individual actions are joined "upon motion of a defendant," 28 U.S.C. § 1332(d)(11)(B)(ii)(II); *see also Tanoh v. Dow Chemical Co.*, 561 F.3d 945, 953 (9th Cir. 2009); *Anderson v. Bayer Corp.*, 610 F. 3d 390, 393 (7th Cir. 2010), there is no such barrier where, also as here, the proposal for joint trial originates with the plaintiffs. *See Abbott*, 2012 WL 4875584, at *3.

10.   Here, the proposal for joint trial in the Petition for Coordination is even clearer than it was in *Abbott*.  In that case, the Seventh Circuit held that a petition for coordination need not specifically request joint trial because "a proposal for a joint trial can be implicit." *Id.* at *3; *see also Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008); *Koral v. Boeing Co.*, 628 F.3d 945, 947 (7th Cir. 2011).  The Seventh Circuit found that the plaintiffs' coordination petition implicitly requested a joint trial where it sought coordination "'through trial'" and "'not solely for pretrial proceedings'" and asserted that coordination "through trial 'would also facilitate the efficient disposition of a number of universal and fundamental substantive questions applicable to all or most Plaintiffs' cases *without the risk of inconsistent adjudication* in those issues between various courts.'" *Abbott*, 2012 WL 4875584, at *3 (citation omitted).

ATL 18,835,115_3

11.     Here, the Petition for Coordination presents all of the factors (and more) that the Seventh Circuit held constituted a request for a joint trial in *Abbott*.  Initially, like the *Abbott* plaintiffs' request for coordination "through trial," the Petition here proposes "*[o]ne judge* hearing *all of the actions* for *all purposes* in a selected site or sites" in order to "promote the ends of justice." (Mem. in Supp. of Pet. for Coordination at 8 (emphasis added).)  Coordination for "all purposes" naturally embraces coordination for trial.

12.     Moreover, like the *Abbott* plaintiffs' assertions concerning the "*risk of inconsistent adjudication*," the Petition for Coordination here emphasizes that "[f]ailure to coordinate these actions will result in the disadvantages of duplicate and inconsistent rulings, orders, or judgments" as to "issues pertaining to liability, allocation of fault and contribution, as well as the same wrongful conduct of defendants." (Mem. in Supp. of Pet. for Coordination at 10; *see also id.* at 6, 8; Ex. D, Sanguinetti Decl. in Supp. of Coordination ¶ 11 ("Without coordination, two or more separate courts will decide essentially the same issues and may render different rulings on liability and other issues.").)  In the same vein, the Petition for Coordination here argues that there are "common issues" among each of the constituent actions, including *whether the plaintiffs are entitled to compensatory and punitive damages*. (*See* Sanguinetti Decl. in Supp. of Coordination ¶ 7.)  The Petition's proposal to resolve the determinations of liability, allocation of fault, and award of compensatory and punitive damages as "common issues" necessarily requires a joint trial.[3]

13.     Indeed, the Seventh Circuit cited similar remarks by plaintiffs concerning the risk of inconsistent adjudication of purported common issues when it observed that "it is difficult to see how a trial court could consolidate the cases as

---

[3] Removing Defendant does not concede that Plaintiffs are entitled to a joint trial, but merely notes that the Petition for Coordination proposes one, thereby entitling Defendants to remove the cases pursuant to the mass action provisions of 28 U.S.C. § 1332.

9

NOTICE OF REMOVAL

1  requested by plaintiffs and not hold a joint trial or an exemplar trial with the legal

2  issues applied to the remaining cases.  In either situation, plaintiffs' claims would be

3  tried jointly."  *Abbott*, 2012 WL 4875584, at *3; *see also* 28 U.S.C. §

4  1332(d)(11)(B)(i) (providing that the mass action standard is satisfied where joint

5  trial is proposed "on the ground that the plaintiffs' claims involve common questions

6  of law or fact").  Thus, even a joint trial as to certain issues, which the Petition for

7  Coordination repeatedly suggests in its discussion of avoiding inconsistent rulings as

8  to "common issues," is sufficient to establish mass action jurisdiction pursuant to 28

9  U.S.C. § 1332(d)(11).

10      14.    In addition, the Petition for Coordination envisions that a joint trial

11  would put pressure on Defendants to settle all California propoxyphene cases.

12  Coordination Counsel's declaration in support of the Petition states that one of the

13  primary motivating factors for settling cases is "the avoidance of the risk of an

14  adverse judgment at trial."  (Sanguinetti Decl. in Supp. of Coordination ¶ 12.)

15  Coordination Counsel argues that coordination is mandated here because if the cases

16  are not coordinated, "[s]ettlement of one of these cases may not end the litigation in

17  the other . . . cases."  (*Id.*)  Implicit in this call for settlement is a proposal for joint

18  trial:  for the threat of adverse judgment at trial to compel settlement or end litigation

19  in the other cases, there must be either a joint trial of all cases, or a judgment at an

20  exemplar trial that is binding on the other cases.  Thus, "[i]n either situation" there is

21  a proposal for joint trial and the first mass action requirement is satisfied.  *Abbott*,

22  2012 WL 4875584, at *3.

23      15.    Finally, as in *Abbott*, Plaintiffs have done nothing to suggest that they

24  propose coordination "solely for pretrial proceedings."  28 U.S.C. §

25  1332(d)(11)(B)(ii)(IV); *see also Abbott*, 2012 WL 4875584, at *3.  To the contrary,

26  for all the reasons set forth above, the Petition for Coordination necessarily

27  constitutes a proposal for coordination for trial.

28

NOTICE OF REMOVAL

ATL 18,835,115_3

16.     Accordingly, the Petition for Coordination proposes joint trial of the monetary claims of more than 100 individuals, and the first requirement of mass action removal is satisfied.

**B.     The Amount in Controversy Is Satisfied**

17.     Both the individual $75,000 and aggregate $5,000,000 amount in controversy requirements for mass action removal are readily satisfied. *See* 28 U.S.C. §§ 1332(a), (d)(2), (d)(11)(B)(i).  Indeed, the Petition for Coordination itself admits that there are "multi-millions of dollars at stake" in these cases (Pet. for Coord. at 10), and Coordination Counsel has publicly stated that the propoxyphene litigation "has the potential to be in the billions of dollars for recoveries around the country."[4]

18.     First, it is apparent from the face of the Complaint, and the serious nature of the "severe cardiovascular injuries" alleged by each Plaintiff (*see* Compl. ¶ 90), that the amount in controversy exceeds $75,000 for each Plaintiff, just as it is for the claims in the other actions embraced by the Petition.  Where, as here, Plaintiffs allege serious bodily injuries, courts have readily found that the amount-in-controversy requirement is satisfied. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001).  In addition, compensatory and punitive damages in excess of the jurisdictional amount of $75,000 have been awarded in products liability cases in California. *See, e.g., Stewart v. Union Carbide Corp.*, 190 Cal. App. 4th 23, 38, 117 Cal. Rptr. 3d 791, 804 (2010); *Karlsson v. Ford Motor Co.*, 140 Cal. App. 4th 1202, 1223-24, 45 Cal. Rptr. 3d 265, 282-83 (2006); *Jones v. John Crane, Inc.*, 132 Cal. App. 4th 990, 1012, 35 Cal. Rptr. 3d 144, 161 (2005).  Other federal courts have thus concluded that the amount in controversy exceeded $75,000 in similar pharmaceutical cases. *See, e.g., Smith v. Wyeth, Inc.*, 488 F. Supp. 2d 625,

---

[4] Olivia Whitaker, *Oklahoma Attorney Predicts Billions of Dollars in Darvocet Lawsuit Recoveries* (Feb. 9, 2011), *available at* http://www.articlesbase.com/mental-health-articles/oklahoma-attorney-predicts-billions-of-dollars-in-darvocet-lawsuit-recoveries-4199525.html.

630-31 (W.D. Ky. 2007) (denying motion to remand); *accord Copley v. Wyeth, Inc.*, No. 09-722, 2009 WL 1089663, at *3 (E.D. Pa. Apr. 22, 2009). In addition, because Plaintiffs' demands for punitive damages are also includable in the amount in controversy, *see Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007), it is evident from the face of the Complaint that the amount of recovery sought by each Plaintiff exceeds $75,000.[5]

19.     Second, because each individual Plaintiff's claim exceeds $75,000, the aggregate amount in controversy for putative coordinated litigation, which embraces the claims of more than 500 individuals, necessarily exceeds $5,000,000, since $75,000 multiplied by 500 is $37,500,000.

20.     Accordingly, the amount-in-controversy requirement is satisfied.

**C.     The Diversity Requirement Is Satisfied**

21.     The diversity requirements for mass action removal have been satisfied. *See* 28 U.S.C. § 1332(d)(2)(A). While diversity removal normally requires complete diversity between plaintiffs and defendants, for removal of a mass action, only "minimal diversity" is required — i.e., that at least one plaintiff be diverse from one defendant. *See id.* This requirement is readily satisfied here: Plaintiff Shirley Thomas, a citizen of California (Compl. ¶ 14), is diverse from Lilly, a citizen of Indiana. (*Id.* ¶ 25.)

22.     Accordingly, all the jurisdictional requirements of mass action removal are satisfied.

---

[5] Removing Defendant notes that it is not required to concede that Plaintiffs are, in fact, entitled to recover more than $75,000. *See Kelderman v. Remington Arms Co.*, 734 F. Supp. 1527, 1528 (S.D. Iowa 1990) (rejecting a plaintiff's attempt to "place [a] defendant in the awkward position of embracing a concession on the important issue of damages," to establish jurisdiction, noting that a "defendant need not go that far"). Indeed, Removing Defendant specifically denies that Plaintiffs are entitled to recover any damages.

ATL 18,835,115_3

## THIS CASE IS REMOVABLE UNDER FEDERAL QUESTION AND SUPPLEMENTAL JURISDICTION

23.    This action is removable under the CAFA "mass action" provisions alone.  However, as a *separate and independent basis for removal*, this action is also properly removable under 28 U.S.C. §§ 1331 and 1367.  Plaintiffs' claims against Generic Defendants are removable because they necessarily raise a substantial and disputed question of federal law.  In addition, all remaining claims are removable subject to the Court's supplemental jurisdiction.

**A.    Plaintiffs' Claims Against Generic Defendants Are Removable Because They Necessarily Raise Substantial Issues of Federal Law**

24.    Plaintiffs' claims against Generic Defendants are removable because they necessarily raise a substantial and disputed question of federal law.  The Supreme Court has held that state-law claims are removable under federal question jurisdiction pursuant to 28 U.S.C. § 1331 where they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 125 S. Ct. 2363, 2368, 162 L. Ed. 2d 257, 265 (2005).

25.    Federal jurisdiction exists where a state law claim necessarily involves the construction or application of federal law.  *See e.g., D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 99 (2d Cir. 2001) ("[A] case is deemed 'to arise under' federal law 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" (alteration in original) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S.Ct. 2841 (1983)).

26.    In addition, this Court has original and removal jurisdiction of civil actions, such as this one, that arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331, 1441(a). Among the civil actions that "arise under" federal law are "state law claims that implicate significant federal issues."

1  *Grable*, 545 U.S. at 312.  Such claims capture the "commonsense notion that a

2  federal court ought to be able to hear claims recognized under state law that

3  nonetheless turn on substantial questions of federal law, and thus justify resort to the

4  experience, solicitude, and hope of uniformity that a federal forum offers on federal

5  issues." *Id.*

6      27.    Thus, federal question jurisdiction also exists where, as here, a "state

7  law claim necessarily raise[s] a stated federal issue, actually disputed and substantial,

8  which a federal forum may entertain without disturbing any congressionally approved

9  balance of federal and state judicial responsibilities." *Id.* at 314.

10     28.    The claims asserted in Plaintiffs' Complaint meet both of these

11 standards for federal question jurisdiction.  As the Eastern District of New York has

12 recently held, claims against generic defendants are removable under *Grable* where,

13 like Plaintiffs' claims here, they allege that the generic defendants are liable in

14 failure-to-warn due to breach of their federal duty to use the same FDA-approved

15 labeling as the brand defendants.  *Bowdrie v. Sun Pharm. Indus. Ltd.*, No. 12-CV-853

16 (WFK) (MDG), 2012 WL 5465994 (E.D.N.Y. Nov. 9, 2012).

17     29.    As recognized by the Supreme Court in *PLIVA, Inc. v. Mensing*, 131 S.

18 Ct. 2567, 180 L. Ed. 2d 580 (2011), generic defendants are prohibited by federal law

19 from independently changing the labeling for their products, but are instead required

20 by federal law to use labeling identical to the FDA-approved labeling used by the

21 brand defendant.  *See id.*, 131 S. Ct. at 2578.  The plaintiffs in *Bowdrie* alleged that

22 the generic defendants were liable on state-law failure-to-warn claims because they

23 breached their duty to employ the same labeling as the brand defendants.  2012 WL

24 5465994, at *1.

25     30.    The *Bowdrie* court held that the plaintiffs' state-law claims that generic

26 defendants "failed to meet their ongoing duty of sameness by failing to . . . update

27 their FDA-approved labeling to mirror updated [brand drug] labeling . . . . necessarily

28 raise[d] a federal question."  2012 WL 5465994, at *3 ("A question of federal law is

a necessary element of Plaintiffs' state law causes of action."). The court further held that this federal question was substantial because it:

> goes far beyond simply incorporating a federal standard into a state law cause of action. To the extent they invoke the "federal duty of sameness," Plaintiffs' causes of action implicate the labeling requirements for generic drug manufacturers nationwide. The federal question present in this case involves a responsibility that is in the first instance, and primarily, federal: regulation of the manufacture, marketing, and distribution of drugs.

*Id.* at *4. Thus, the court held, the Plaintiffs' claims were removable under federal question jurisdiction under the rule of *Grable*. *Id.* at *3.

31.     The same reasoning applies to this action, where, just like in *Bowdrie*, Plaintiffs claim that Generic Defendants are liable in failure-to-warn due to their alleged failure to update their labeling to conform to the brand. (*See* Compl. ¶ 6-7.)

32.     It is irrelevant that Plaintiffs may not have intended to plead a state law cause of action that raises a substantial and disputed issue of federal law to establish a basis for jurisdiction arising from a federal question. In *Grable*, the Supreme Court held that federal question jurisdiction exists when a state law cause of action raises a substantial federal question that is in dispute. *Grable*, 545 U.S. at 316-20. Plaintiffs may not avoid this result through artful pleading. *See Rivet v. Regions Bank*, 522 U.S. 470, 475, 118 S. Ct. 921, 925, 139 L. Ed. 2d 912, 919 (1998) (holding that "[i]f a court concludes that plaintiff has 'artfully pleaded' claims" by omitting to plead federal questions, "it may uphold removal even though no federal question appears on the face of the plaintiff's complaint").

33.     Accordingly, Plaintiffs' failure-to-update claims against Generic Defendants are properly removable under federal question jurisdiction pursuant to the rule of *Grable* because they necessarily (indeed, affirmatively) raise a substantial, disputed issue of federal law.

ATL 18,835,115_3

**B.    Supplemental Jurisdiction Extends to All Other Claims**

34.    This Court has "supplemental jurisdiction over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  As set forth above, Plaintiffs' claims against Generic Defendants are within the Court's original jurisdiction pursuant to 28 U.S.C. § 1331.  On an individual, per-Plaintiff basis, all other claims in this action arise out of the same case or controversy in that they seek relief in connection with personal injuries allegedly due to the ingestion of a propoxyphene-containing pain medication.

35.    Accordingly, there is supplemental jurisdiction over all other claims in this action.

## THIS CASE IS REMOVABLE UNDER DIVERSITY JURISDICTION

36.    This Court has subject-matter jurisdiction over this action under the CAFA "mass action" provisions alone.  However, as a *separate and independent basis for subject-matter jurisdiction*, this case is removable pursuant to 28 U.S.C. §§ 1332 and 1441 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different States.  Initially, the amount-in-controversy requirement is satisfied for the reasons set forth in the mass action section above.  Further, although Plaintiffs have improperly failed to allege the citizenship of any Plaintiff other than Shirley Thomas, Removing Defendant states, upon information and belief and subject to appropriate additional information to be obtained, that complete diversity exists in this case pursuant to the theories of fraudulent joinder and fraudulent misjoinder. Removing Defendant has asserted diversity jurisdiction at this time in order to avoid waiver of this basis for removal in connection with their removal of this action under the CAFA mass action provisions set forth above.

ATL 18,835,115_3

## A.   No Manufacturing Defendant Is a California Citizen

37.   The Defendants allegedly involved in the manufacture, marketing, and/or sale of prescription pain medications containing propoxyphene are citizens of Alabama, Delaware, Indiana, Ireland, Kentucky, Maryland, Massachusetts, Missouri, Nevada, New Jersey, North Carolina, Pennsylvania, and West Virginia, and are thus completely diverse from Plaintiffs.

a.   Removing Defendant is informed and believes that Defendant Eli Lilly and Company is incorporated under the laws of Indiana and has its principal place of business in Indiana, and is therefore a citizen of Indiana for purposes of diversity.

b.   Removing Defendant is informed and believes that Defendant aaiPharma Inc. is incorporated under the laws of Delaware and has its principal place of business in North Carolina, and is therefore a citizen of Delaware and North Carolina for purposes of diversity.

c.   Removing Defendant is informed and believes that Defendant AAIPharma LLC is incorporated under the laws of Delaware and has its principal place of business in North Carolina, and is therefore a citizen of Delaware and North Carolina for purposes of diversity.

d.   Removing Defendant is informed and believes that Defendant AAI Development Services Inc. is incorporated under the laws of Delaware and has its principal place of business in North Carolina, and is therefore a citizen of Delaware and North Carolina for purposes of diversity.

e.   Removing Defendant is informed and believes that Defendant NeoSan Pharmaceuticals Inc. is incorporated under the laws of Delaware and has its principal place of business in North Carolina, and is therefore a citizen of Delaware and North Carolina for purposes of diversity.

ATL 18,835,115_3

f.     Removing Defendant is informed and believes that Defendant Xanodyne Pharmaceuticals, Inc. is incorporated under the laws of Delaware and has its principal place of business in Kentucky, and is therefore a citizen of Delaware and Kentucky for purposes of diversity.

g.     Removing Defendant is informed and believes that Defendant Qualitest Pharmaceuticals, Inc. is incorporated under the laws of Alabama and has its principal place of business in Alabama, and is therefore a citizen of Alabama for purposes of diversity.

h.     Removing Defendant is informed and believes that Defendant Vintage Pharmaceuticals, Inc. is incorporated under the laws of Alabama and has its principal place of business in Alabama, and is therefore a citizen of Alabama for purposes of diversity.

i.     Removing Defendant is informed and believes that Defendant Propst Distribution, Inc. is incorporated under the laws of Alabama and has its principal place of business in Alabama, and is therefore a citizen of Alabama for purposes of diversity.

j.     Removing Defendant is informed and believes that Defendant Brenn Distribution Inc. is incorporated under the laws of Alabama and has its principal place of business in Alabama, and is therefore a citizen of Alabama for purposes of diversity.

k.     Removing Defendant is informed and believes that Defendant Brenn Manufacturing, Inc. is incorporated under the laws of Alabama and has its principal place of business in Alabama, and is therefore a citizen of Alabama for purposes of diversity.

l.     Removing Defendant is informed and believes that Defendant Cornerstone Biopharma, Inc. is incorporated under the laws of Nevada and has its principal place of business in North Carolina, and is therefore a citizen of Nevada and North Carolina for purposes of diversity.

18

NOTICE OF REMOVAL

m.     Removing Defendant is informed and believes that Defendant Cornerstone Biopharma Holdings, Inc. is incorporated under the laws of Delaware and has its principal place of business in North Carolina, and is therefore a citizen of Delaware and North Carolina for purposes of diversity.

n.     Removing Defendant is informed and believes that Defendant Teva Biopharmaceuticals, Inc. is incorporated under the laws of Delaware and has its principal place of business in Maryland, and is therefore a citizen of Delaware and Maryland for purposes of diversity.

o.     Removing Defendant Teva Pharmaceuticals USA, Inc. is incorporated under the laws of Delaware and has its principal place of business in Pennsylvania, and is therefore a citizen of Delaware and Pennsylvania for purposes of diversity.

p.     Removing Defendant is informed and believes that Defendant Mylan Pharmaceuticals, Inc. is incorporated under the laws of West Virginia and has its principal place of business in West Virginia, and is therefore a citizen of West Virginia for purposes of diversity.

q.     Removing Defendant is informed and believes that Defendant Mylan, Inc. is incorporated under the laws of Pennsylvania and has its principal place of business in Pennsylvania, and is therefore a citizen of Pennsylvania for purposes of diversity.

r.     Removing Defendant is informed and believes that Defendant Covidien PLC is incorporated under the laws of Ireland, and is therefore a citizen of Ireland for purposes of diversity.

s.     Removing Defendant is informed and believes that Defendant Covidien Inc. is incorporated under the laws of Delaware and has its principal place of business in Massachusetts, and is therefore a citizen of Delaware and Massachusetts for purposes of diversity.

19

NOTICE OF REMOVAL

t.      Removing Defendant is informed and believes that Defendant Mallinckrodt Inc. is incorporated under the laws of Delaware and has its principal place of business in Missouri, and is therefore a citizen of Delaware and Missouri for purposes of diversity.

u.      Removing Defendant is informed and believes that Defendant Watson Pharmaceuticals, Inc. is incorporated under the laws of Nevada, and has its principal place of business in New Jersey, and is therefore a citizen of Nevada and New Jersey for purposes of diversity.

v.      Defendant Endo Pharmaceuticals Holdings Inc. is incorporated under the laws of Delaware and has its principal place of business in Pennsylvania and is therefore a citizen of Delaware and Pennsylvania for purposes of diversity.

w.      Defendant Endo Pharmaceuticals Inc. is incorporated under the laws of Delaware and has its principal place of business in Pennsylvania and is therefore a citizen of Delaware and Pennsylvania for purposes of diversity.

x.      Defendant Generics International (US Parent), Inc. is incorporated under the laws of Delaware and has its principal place of business in Alabama, and is therefore a citizen of Delaware and Alabama for purposes of diversity.

y.      Defendant Generics International (US), Inc. is incorporated under the laws of Delaware and has its principal place of business in Alabama, and is therefore a citizen of Delaware and Alabama for purposes of diversity.

z.      Defendant Vintage Pharmaceuticals, LLC is a limited liability company and therefore has the citizenship of its members for purposes of diversity.  Defendant Generics International (US), Inc. is the sole member of Vintage Pharmaceuticals, LLC, and, therefore, for diversity

20

ATL 18,835,115_3

purposes, Vintage Pharmaceuticals, LLC is deemed a citizen of Delaware and Alabama.

aa.     Defendant Generics Bidco I, LLC is a limited liability company and therefore has the citizenship of its members for purposes of diversity.  Generics International (US), Inc. is the sole member of Generics Bidco I, LLC, and therefore, for diversity purposes, Generics Bidco I, LLC is deemed a citizen of Delaware and Alabama.

bb.     Defendant Generics Bidco II, LLC is a limited liability company and therefore has the citizenship of its members for purposes of diversity.  Generics International (US), Inc. is the sole member of Generics Bidco II, LLC, and therefore, for diversity purposes, Generics Bidco II, LLC is deemed a citizen of Delaware and Alabama.

**B.     McKesson Is Fraudulently Joined**

38.     Only McKesson, an alleged "Distributor Defendant" in this action, is purportedly a citizen of California, because McKesson is allegedly incorporated under the laws of Delaware and has its principal place of business in California.  (*See* Compl. ¶ 18.)  As set forth below, McKesson has been fraudulently joined to this action, and thus its citizenship should be disregarded for purposes of diversity.

39.     Under the fraudulent-joinder doctrine, a court should disregard the citizenship of a defendant where, as here, there is "no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant."  *Taylor v. Jeppesen DataPlan, Inc.*, No. C 10-1920 SBA, 2010 U.S. Dist. LEXIS 106160, at *5 (N.D. Cal. Sept. 27, 2010) (internal quotation marks and citation omitted).  Non-diverse defendants are fraudulently joined – and their presence in the lawsuit is thus ignored for purposes of determining the propriety of removal – where no viable cause of action has been stated against them.  *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1100 (C.D. Cal. 2002); *United Computer*

1   *Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002); *see also Badon v. RJR*

2   *Nabisco, Inc.*, 224 F.3d 382, 393 (5th Cir. 2000) (pursuant to the fraudulent-joinder

3   doctrine, a court should disregard the citizenship of an in-state defendant where, as

4   here, "there is no reasonable basis for predicting that plaintiffs might establish

5   liability . . . against the in-state defendants"); *Great Plains Trust Co. v. Morgan*

6   *Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (affirming district

7   court's finding of fraudulent joinder and recognizing that a "reasonable" basis to

8   predict that a plaintiff could prevail on his or her claims against the in-state

9   defendants requires more than a "theoretical" basis).  That is the case here, for there

10   is no possibility "'that the plaintiff[s] will be able to establish [their] cause[s] of

11   action in state court against'" McKesson. *Taylor*, 2010 U.S. Dist. LEXIS 106160, at

12   *5 (citation omitted).

13       40.    All of Plaintiffs' claims against McKesson – both those that challenge

14   the labeling for propoxyphene and those that challenge its design – fail as a matter of

15   law.  In *Mensing*, the Supreme Court held that state-law claims challenging the

16   labeling of a generic prescription medication are preempted, because federal law

17   requires generic defendants to use the same labeling as the branded manufacturer and

18   prohibits those generic defendants from independently changing the FDA-approved

19   labeling.  131 S. Ct. at 2578.[6]  As explained by the court in *In re Fosamax*

20   *(Alendronate Sodium) Products Liability Litigation (No. II)*, MDL No. 2243 (JAP-

21   LHG), 2012 WL 181411 (D.N.J. Jan. 17, 2012), the Supreme Court's holding in

22   *Mensing* also preempts all failure-to-warn claims against distributors of prescription

23

24

25      [6] The Ninth Circuit has recognized that a dispositive affirmative defense – here, federal preemption – may serve as the basis for a showing of fraudulent joinder.

26   *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313 (9th Cir. 1998).  That showing is not barred by the common defense rule, which applies "only when the common defense

27   asserted would be equally dispositive as to all of the defendants." *McDonal v. Abbott Labs.*, 408 F.3d 177, 184 (5th Cir. 2005).  Here, *Mensing* preemption is not

28   dispositive as to all Defendants and it may apply in different ways with respect to Generic Defendants and distributors such as McKesson based on the federal law and regulations applicable to each.

NOTICE OF REMOVAL

ATL 18,835,115_3

1  medications like McKesson, because such distributors are also not authorized to

2  change product labeling under federal law. *Id.* at \*3; *accord Stevens v. Cmty. Health*

3  *Care, Inc.*, 29 Mass. L. Rptr. 153 (Mass. Super. Ct. Essex County 2011).

4      41.    Likewise, Plaintiffs' claims against McKesson challenging the product's

5  design are barred because a distributor of prescription medications, like a generic

6  defendant, is no more free to change the design and composition of the FDA-

7  approved products it sells than it is to change the labeling, as numerous courts have

8  recognized. *See In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, MDL

9  No. 2226, 2012 WL 718618, at \*3 (E.D. Ky. Mar. 5, 2012) (dismissing as preempted

10  all claims "based on the allegedly defective design of the drug, which the Generic

11  Defendants, bound by their 'ongoing federal duty of sameness,' were powerless to

12  change" (citation omitted)); *accord, e.g.*, *In re Pamidronate Prods. Liab. Litig.*, 842

13  F. Supp. 2d 479, 484 (E.D.N.Y. 2012); *Fosamax*, 2012 WL 181411, at \*6; *Stevens v.*

14  *Pliva, Inc.*, No. 6:10-0886, 2011 WL 6224569, at \*2 (W.D. La. Nov. 15, 2011).

15  Thus, because both of Plaintiffs' claims against McKesson fail as a matter of law,

16  McKesson is fraudulently joined and its purported California citizenship does not

17  preclude removal.

18      42.    In addition, Plaintiffs' design defect claims against McKesson fail as a

19  matter of California law because California has long held that strict liability design

20  defect claims are improper with respect to prescription medications. *See Brown v.*

21  *Super. Ct.*, 44 Cal. 3d 1049 (1988). In *Brown*, the California Supreme Court adopted

22  the rule of the Restatement (Second) of Torts § 402A comment k with respect to *all*

23  prescription medications, holding that liability for such medications was to be

24  determined "under general principles of negligence, and for failure to warn of known

25  or reasonably knowable side effects," *id.* at 1069 n.12, and thereby "granting

26  immunity from strict liability to all such drugs." *Id.* at 1069 n.11; *see also*

27  Restatement (Second) of Torts § 402A cmt. k (stating that "[t]he seller of such

28  products [here, prescription medications] . . . is not to be held to strict liability for

1  unfortunate consequences attending their use" provided "they are properly prepared

2  and marketed, and proper warning is given"); *Skinner v. Warner-Lambert Co.*, No.

3  CV 03-1643-R(RZX), 2003 WL 25598915, at *1 (C.D. Cal. Apr. 28, 2003)

4  ("Pursuant to comment k . . . and California law following comment k, a distributor

5  of a prescription drug is not subject to strict liability."). Accordingly, based on the

6  conclusive holding of the California Supreme Court in *Brown*, Plaintiffs' strict

7  liability design defect claims against McKesson fail as a matter of law.

8      43.    But even further, and apart from the legal viability of Plaintiffs' claims

9  against McKesson, the fraudulent joinder of McKesson is obvious based on the

10  insufficiency of Plaintiffs' pleadings. *See, e.g.*, *Brown v. Allstate Ins.*, 17 F. Supp. 2d

11  1134, 1137 (S.D. Cal. 1998) (finding in-state defendants fraudulently joined where

12  "no material allegations against [the in-state defendants] are made"); *Lyons v. Am.*

13  *Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept.

14  30, 1997) (holding that there is "no better admission of fraudulent joinder of [the

15  resident defendants]" than the failure of the plaintiff "to set forth any specific factual

16  allegations" against them). To state a proper claim for relief, Plaintiffs must allege

17  "enough facts to state a claim to relief that is plausible on its face" and allow the

18  court to draw the reasonable inference that the defendant is liable for the misconduct

19  alleged. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974,

20  167 L. Ed. 2d 929, 949 (2007). Legal conclusions and threadbare recitals of

21  elements, supported by mere conclusion, simply do not suffice. *Ashcroft v. Iqbal*,

22  556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009). This Court

23  is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"

24  *Twombly*, 550 U.S. at 555 (citation omitted). Rather, Rule 8 "'contemplate[s] the

25  statement of circumstances, occurrences, and events in support of the claim

26  presented.'" *Id.* at 556 (citation omitted). Thus, pleadings – such as Plaintiffs'

27  Complaint here – which fail to set forth factual allegations to support asserted legal

28  conclusions should be dismissed for failure to state a claim. *Twombly*, 550 U.S. at

ATL 18,835,115_3

1    555; *see also Iqbal*, 556 U.S. 662, 678-79 ("Rule 8 … does not unlock the doors of

2    discovery for a plaintiff armed with nothing more than conclusions.").

3        44.    Here, Plaintiffs offer only conclusory allegations that McKesson

4    distributed the pain medications containing propoxyphene that they allegedly

5    ingested.  These assertions are based solely on Plaintiffs' vague factual allegations,

6    "[u]pon information and belief and subject to discovery of information within the

7    exclusive control of defendants," that McKesson "maintains comprehensive

8    distribution agreements with major retail pharmacies including … CVS, Wal-Mart,

9    and Rite Aid." (Compl. ¶ 20.)  Yet Plaintiffs *never allege* that they obtained their

10   prescriptions from any of these pharmacies.  Moreover, as Plaintiffs admit,

11   McKesson is only "one of" the national distributors of prescription medications (*id.* ¶

12   22), and it is not even the exclusive distributor of prescription medications for the

13   pharmacies identified by Plaintiffs.  For example, press releases reveal that in 2009,

14   both McKesson *and its competitor Cardinal Health* renewed national pharmaceutical

15   distribution agreements with CVS.[7]  In light of the presence of other distributors, who

16   are not joined as defendants, Plaintiffs have failed to allege facts giving rise to a

17   plausible claim of causation with respect to McKesson, thus leading to the "suspicion

18   that McKesson could have been added to defeat diversity removal." *See Camara v.*

19   *Bayer Corp.*, No. C 09-06084 WHA, 2010 WL 902780, at *3 (N.D. Cal. Mar. 9,

20   2010) (staying case pending transfer to MDL and declining to decide motion to

_____

22       [7] *Compare* Cardinal Health Renews Distribution Agreement with CVS
     Caremark, Cardinal Health (July 6, 2009),
23   http://cardinalhealth.mediaroom.com/index.php?s=43&item=277 ("Cardinal Health
     today announced it has renewed its distribution agreement with CVS Caremark to
24   supply pharmaceuticals to its national network of retail pharmacies through mid-
     2013."), *with* McKesson Renews Pharmaceutical Distribution Agreement with CVS
25   Caremark, McKesson (July 6, 2009),
     http://www.mckesson.com/en_us/McKesson.com/About%2BUs/Newsroom/Press%2
26   BReleases%2BArchives/2009/McKesson%2BRenews%2BPharmaceutical%2BDistri
     bution%2BAgreement%2Bwith%2BCVS%2BCaremark.html ("McKesson
27   Corporation . . . today announced that it has renewed its current distribution
     agreement to supply CVS Caremark with branded and generic drugs.").

28

ATL 18,835,115_3

1   remand because plaintiff's complaint failed "to clearly explain the role of McKesson

2   in the injury of these specific plaintiffs"). *Id.*  Plaintiffs' allegations against

3   McKesson simply do not meet the *Iqbal/Twombly* pleading standard.

4        45.    For all these reasons, McKesson is fraudulently joined, and its

5   citizenship must be disregarded for jurisdictional purposes.

6        **C.    Plaintiffs Are Fraudulently Misjoined**

7        46.    Removing Defendant states that, upon information and belief, Plaintiffs

8   are citizens of states other than Alabama, Delaware, Indiana, Kentucky, Maryland,

9   Massachusetts, Missouri, Nevada, North Carolina, Pennsylvania, New Jersey, and

10  West Virginia, and the properly joined parties are therefore completely diverse.

11  Nevertheless, to the extent certain Plaintiffs are citizens of the same state as any

12  defendant other than McKesson, removal is not barred due to lack of complete

13  diversity because Plaintiffs have fraudulently misjoined the distinct personal injury

14  claims of 39 Plaintiffs (38 of which also assert distinct personal injury claims of

15  deceased individuals) for the purpose of frustrating diversity.  Removing Defendant

16  states that but for Plaintiffs' fraudulent misjoinder of their varying claims, the vast

17  majority of Plaintiffs would be diverse from Defendants and their claims satisfy the

18  requirements for diversity jurisdiction.  Accordingly, the Court should sever

19  Plaintiffs' claims by Plaintiff family and should find that it has diversity jurisdiction

20  over all Plaintiff families as to whom complete diversity would be satisfied upon

21  severance.

22       47.    The fraudulent misjoinder doctrine is intended to ensure that a

23  defendant's statutory right to remove cannot be subverted by procedural

24  gamesmanship, such as the type engaged in by Plaintiffs here. *See Tapscott v. MS*

25  *Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (fraudulent-misjoinder

26  doctrine applies where plaintiffs' claims are "egregious[ly]" misjoined to defeat

27  federal jurisdiction and "have no real connection" to one another), *abrogated on*

28  *other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); *see*

26

1  *also In re Benjamin Moore & Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002) (noting "the

2  force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more

3  permissible than fraudulent misjoinder of defendants to circumvent diversity

4  jurisdiction"); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004) ("[T]his

5  Court agrees with the Fifth and Eleventh Circuits that the [fraudulent misjoinder] rule

6  is a logical extension of the established precedent that a plaintiff may not fraudulently

7  join a defendant in order to defeat diversity jurisdiction in federal court") (footnotes

8  omitted).  Numerous courts from around the country have affirmed the validity of the

9  fraudulent misjoinder doctrine as a basis for removal.[8]

10      48.    Under the fraudulent misjoinder doctrine, federal diversity jurisdiction

11  exists "where diversity is destroyed only through misjoinder of parties."  *Asher v.*

12  *3M*, No. 04-CV-522-KKC, 2005 U.S. Dist. LEXIS 42266, at *37 (E.D. Ky. June 30,

13  2005).  "Misjoinder of parties occurs when a party fails to satisfy the conditions for

14  permissive joinder under Rule 20(a)."  *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp.

15  2d 136, 144 (S.D.N.Y. 2001).  Accordingly, fraudulent misjoinder applies where, as

16  in this case, Plaintiffs have improperly joined different claims that did not arise "out

17  of the same transaction, occurrence, or series of transactions or occurrences" and give

18  rise to common questions of law or fact.  *See* Fed. R. Civ. P. 20(a); Cal. Code Civ.

19

20         [8] *See, e.g., Augustine v. Emp'rs. Mut. Cas. Co.*, No. 2:08-cv-1102, 2010 U.S.

21  Dist. LEXIS 126431, at *49 (E.D. La. Nov. 30, 2010); *WIAV Networks, LLC v.*
*3COM Corp.*, No. C 10-03448 WHA, 2010 U.S. Dist. LEXIS 110957, at *19-20

22  (N.D. Cal. Oct. 1, 2010); *Bishop v. Sturdivant*, No. 4:10CV49TSL-JCS, 2010 U.S.
Dist. LEXIS 79992, at *8 (S.D. Miss. Aug. 6, 2010); *Hughes v. Sears, Roebuck &*

23  *Co.*, No. 2:09–CV–93, 2009 WL 2877424, at *5-6 (N.D. W. Va. Sept. 3, 2009);
*Willingham v. State Farm Ins. Co.*, No. 2:09-CV-59-SA-SAA, 2009 U.S. Dist.

24  LEXIS 76639, at *11 (N.D. Miss. Aug. 27, 2009); *Sutton v. Davol, Inc.*, 251 F.R.D.
500, 505 (E.D. Cal. 2008); *Milliet v. Liberty Mut. Ins. Co.*, No. 07-7443 SECTION

25  "N" (4), 2008 U.S. Dist. LEXIS 2344, at *7-8 (E.D. La. Jan. 11, 2008); *Jones v. State*
*Farm Fire & Cas. Co.*, No. 06-7994 SECTION: "K"(2), 2007 U.S. Dist. LEXIS

26  102293, at *4 (E.D. La. Feb. 28, 2007); *Grennell v. W. S. Life Ins. Co.*, 298 F. Supp.
2d 390, 396 (S.D. W. Va. 2004); *Reed v. Am. Med. Sec. Grp., Inc.*, 324 F. Supp. 2d

27  798, 803-05 (S.D. Miss. 2004); *Burns v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 401, 403
(S.D. W. Va. 2004); *Madison Materials Co. v. St. Paul Fire & Marine Ins. Co.*, No.

28  3:04-CV-14 WS, 2004 U.S. Dist. LEXIS 31111, at *13 (S.D. Miss. Sept. 14, 2004);
*Smith v. Nationwide Mut. Ins. Co.*, 286 F. Supp. 2d 777, 781 (S.D. Miss. 2003).

1  Proc. § 378; *see also Adams v. I-Flow Corp.*, CV09-09550 R SSX, 2010 WL

2  1339948, at *8 (C.D. Cal. Mar. 30, 2010) ("The California rule on joinder of parties

3  plaintiff is practically identical to [the federal rule]."). Where fraudulent misjoinder

4  applies, a court must sever the improperly joined claims into separate and distinct

5  cases.

6      49.    Here, the claims of these 39 different Plaintiffs (38 of which also assert

7  distinct personal injury claims of deceased individuals) have been fraudulently

8  misjoined because they do not arise out of the same transaction, occurrence, or series

9  of transactions or occurrences.

10      50.    Among other differences with respect to the 39 Plaintiffs (38 of which

11  also assert distinct personal injury claims of deceased individuals) in this action, each

12  Plaintiff (or Plaintiff family) necessarily has a distinct medical history, including a

13  treatment regimen, prior history of injury, genetic risk factors, and prescriptions of

14  propoxyphene by different healthcare providers. Plaintiffs purchased propoxyphene

15  pain products from different pharmacies, for different purposes, and after different

16  conversations with their individual healthcare providers. They likely would have

17  used propoxyphene pain products at different doses, for different durations, for

18  different conditions, and during different years. Plaintiffs' extremely broad

19  allegations of "cardiovascular injuries" can encompass a wide variety of conditions,

20  each of which is affected in different ways by a multitude of different causal factors.

21      51.    Finally, to the extent additional information shows that Plaintiffs reside

22  and allegedly incurred injuries in different states, the law of each Plaintiff's home

23  state is likely to govern his or her claims. *See Boaz v. Boyle & Co.*, 40 Cal. App. 4th

24  700, 713, 46 Cal. Rptr. 2d 888 (1995) ("[T]he lack of a significant California

25  connection [the circumstances giving rise to plaintiffs' claims] provide[s] strong

26  reasons to believe that a California court would look to the substantive law of

27  [plaintiffs' home state]."). As such, Plaintiffs' claims would implicate the laws of

28

1  their different home states, and each of these states has unique and conflicting laws

2  regarding products liability claims.

3      52.    Numerous courts have found fraudulent misjoinder under the precise

4  circumstances presented here.  Those courts have recognized that claims by

5  pharmaceutical product-liability plaintiffs – like those in this case – are highly

6  individualized and cannot be joined to defeat jurisdiction, even where the plaintiffs

7  allegedly used the same product.  *See, e.g., In re Fosamax*, 2012 WL 1118780, at *4

8  (finding fraudulent misjoinder where plaintiffs "allege such unspecific injuries as to

9  make it impossible to determine how the Plaintiffs share any connection" and "given

10  the complicated causation questions that pervade drug product liability claims,

11  Plaintiffs' claims will require divergent questions of law and fact"); *Weaver v. Am.*

12  *Home Prods. Corp. (In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine)*

13  *Prods. Liab. Litig.)*, 294 F. Supp. 2d 667, 679 (E.D. Pa. 2003) (finding that plaintiffs

14  were fraudulently misjoined because "the claims of the pharmaceutical plaintiffs who

15  had drugs prescribed by different doctors for different time periods do not arise out of

16  the same 'transaction, occurrence, or series of transactions or occurrences'") (quoting

17  Fed. R. Civ. P. 20(a)); *In re Baycol Prods. Litig.*, No. 03-2931, 2003 WL 22341303,

18  at *3 (D. Minn. 2003) (holding that a plaintiff in a pharmaceutical product-liability

19  action had "been fraudulently [mis]joined with the other plaintiffs, warranting

20  severance and remand" of that plaintiff's claims and denying plaintiffs' motion to

21  remand); *In re Rezulin*, 168 F. Supp. 2d at 146 (prescription drug plaintiffs' claims

22  were fraudulently misjoined where they did not "allege that they received Rezulin

23  from the same source or that they were exposed to Rezulin for similar periods of

24  time" and where they alleged "different injuries"); *Chaney v. Gate Pharms. (In re*

25  *Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.)*, No.

26  Civ.A. 98-20478, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999) (pleading went

27  "well beyond mere misjoinder" where plaintiffs "attempt[ed] to join persons from

28  seven different states into one civil action who have absolutely no connection to each

1    other except that they each ingested fenfluramine, Redux (dexfenfluramine),

2    phentermine or some combination of those drugs").

3         53.    Numerous federal courts have also granted motions to sever in similar

4    cases. *See, e.g., Boschert v. Pfizer, Inc.*, No. 4:08-CV-1714, 2009 U.S. Dist. LEXIS

5    41261, at *7-8 (E.D. Mo. May 14, 2009) (granting motion to sever claims of four

6    plaintiffs allegedly injured as a result of using smoking-cessation medication

7    Chantix, holding that, "the mere fact [that] four plaintiffs took Chantix at some point

8    in time and suffered some sort of mental or behavioral side-effect is not enough of a

9    logical or factual connection to satisfy the same transaction or occurrence

10   requirement."); *Cumba v. Merck & Co.*, No. 08-CV-2328, 2009 U.S. Dist. LEXIS

11   41132, at *4-5 (D.N.J. May 12, 2009) (granting motion to sever claims of 49

12   plaintiffs who allegedly "took the drug Vytorin and . . . [allegedly] sustained broadly

13   similar injuries as a result thereof" because their claims were based on disparate

14   facts); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769, 2007 U.S. Dist. LEXIS

15   17603, at *115-22 (M.D. Fla. Mar. 7, 2007) (severing claims of multiple plaintiffs

16   alleging injury from use of Seroquel and ordering each to file an individual complaint

17   and pay the court's full filing fee).

18        54.    As in the above-cited cases, Plaintiffs' claims here do not arise out of the

19   same transaction, occurrence, or series of transactions; nor do they give rise to

20   common questions of law or fact.  Thus, the claims of each Plaintiff family should be

21   severed into separate actions and the Court should determine that it has diversity

22   jurisdiction over the remaining Plaintiff families as to whom complete diversity

23   exists.

24        55.    Moreover, subject to obtaining additional information regarding the

25   basic details of Plaintiffs' claims, Removing Defendant reserves its right to assert the

26   fraudulent joinder of any Defendant as to any individual Plaintiff (and spouse if

27   applicable) who does not allege ingestion of a product manufactured by that

28

ATL 18,835,115_3

1   Defendant, such that complete diversity would exist as to that Plaintiff upon the

2   severance requested above.

3                 **ALL REMOVAL PROCEDURES ARE SATISFIED**

4        56.    Because this case is removable as a mass action together with the other

5   actions embraced by the Petition for Coordination, all of those cases are being

6   removed upon substantially the same grounds.

7        57.    Removing Defendant has not yet been served in this action.

8   Accordingly, this removal is timely, since Removing Defendant was not required to

9   remove until 30 days from service of the Complaint.  *See* 28 U.S.C. § 1446(b)(1).

10       58.    All defendants properly joined and served consent to the removal of this

11   action, since Removing Defendant is informed that only McKesson Corporation has

12   been served in this action and that McKesson Corporation consents to its removal.

13   *See id.* § 1446(b)(2)(A).  In addition, Removing Defendant states that, with respect to

14   the mass action removal, the consent of other Defendants to remove is not required.

15   *See id.* § 1453(b).

16       59.    Removing Defendant states that no Defendant properly joined and

17   served is a resident of this State, because McKesson, the only alleged citizen of

18   California, is fraudulently joined for the reasons set forth above.  *See id.* §

19   1441(b)(2).  Moreover, with respect to mass action jurisdiction, removal is not barred

20   by the California citizenship of any Defendant.  *See id.* § 1453(b).

21       60.    Removing Defendant has not been served in this action with any

22   process, pleadings or orders.  Nevertheless, Removing Defendant attaches the

23   Complaint in this action as Exhibit A to the accompanying Declaration.  *See id.* §

24   1446(d).

25       61.    Written notice of this removal is being provided to all adverse parties

26   and is being filed with the clerk of the California Superior Court.  *See id.*

27       62.    Removing Defendant hereby reserves its right to amend this notice of

28   removal.

ATL 18,835,115_3

1                      **INTRADISTRICT ASSIGNMENT**

2       63.     Plaintiffs filed this case in the Superior Court of the State of California

3 for the County of Riverside.  Therefore, this case may properly be removed to the

4 Eastern Division of the Central District of California.  *See* 28 U.S.C. § 1441(a).

5                           **NO ADMISSION**

6       64.     Removing Defendant does not concede in any way that the allegations in

7 Plaintiffs' pleadings are accurate, or that Plaintiffs are entitled to compensatory or

8 statutory damages, penalties, punitive damages, attorney fees, or any other relief.

9                             \* \* \* \*

10     WHEREFORE, Removing Defendant respectfully removes this action from

11 the Superior Court of the County of Riverside, in the State of California, bearing

12 Number RIC1216707, to this Court.

13 DATED:  November 20, 2012          Respectfully submitted,

14                                GREENBERG TRAURIG, LLP

15

16                                *Amy B. Alderfer (mxr)*

17                               Amy B. Alderfer

18                               Attorneys for Defendant Teva Pharmaceuticals
                                   USA, Inc.

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL

ATL 18,835,115_3

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is David T. Bristow.

The case number on all documents filed with the Court should read as follows:

## EDCV12- 2039 VAP (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>THOMAS, SHIRLEY, et al. (see attachment) | **DEFENDANTS**<br>see attachment |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>see attachment | Attorneys (If Known)<br>Ginger Pigott (SBN 162908) (pigottg@gtlaw.com)<br>Amy B. Alderfer (SBN 205482) (alderfera@gtlaw.com)<br>GREENBERG TRAURIG, LLP<br>1840 Century Park East, Ste. 1900<br>Los Angeles, CA 90067, 310-586-7700<br>Attorneys for Defendant Teva Pharmaceuticals USA, Inc. |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding    ☒ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. §§ 1332, 1441 (diversity); federal preemption of claims for damages due to ingestion of prescription medication w/ propoxyphene

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☒ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☒ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 61 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 446 American with Disabilities – Other | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: **ED CV12-02039**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

| CV-71 (05/08) | CIVIL COVER SHEET | Page 1 of ... |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☐ No ☒ Yes

If yes, list case number(s):  12-cv-04399-PSG(Ex); 12-cv-00818-JFW(PLAx); 11-cv-06147-PSG(Ex)

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☒ A. Arise from the same or closely related transactions, happenings, or events; or

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Alabama, Delaware, Indiana, Kentucky, Maryland, Massachusetts, North Carolina, Pennsylvania, Missouri, West Virginia, New Jersey, Nevada, Ireland |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiffs allege a substantial part of the events giving rise to this claim occurred within the County of Riverside | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Amy B. Alderfer (mkb)_   Date November 20, 2012

Amy B. Alderfer

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                                          CIVIL COVER SHEET                                          Page 2 of

American LegalNet, Inc.
www.FormsWorkflow.com

**Attachment to Civil Cover Sheet CV-71**

**Item I.(a) — Additional Plaintiffs**

MCKISKI, BARBARA, individually and as next of kin to KENNETH MCKISKI, deceased;

MCMILLIAN, ANGEL, individually and as next of kin to TERRY L. MCMILLAN, deceased;

MORGAN, KRISTINE, individually and as next of kin to DENNIS WAGNER, deceased;

MOSS, YVONNE, individually and as next of kin to STEVEN W. MOSS, deceased;

NOEL, WARREN, individually and as next of kin to MARY NOEL, deceased;

PHILLIPS, LINDA, individually and as next of kin to BOBBY L. PHILLIPS, deceased;

PROCTOR, MARTHA, individually and as next of kin to MICHAEL R. PROCTOR, deceased;

RAINE, TINA, individually and as next of kin to RONALD RAINE, deceased;

RAMER, ROCKY, individually and as next of kin to GLENYS RAMER, deceased;

RICHARDSON, JAMES, individually and as next of kin to BARBARA RICHARDSON, deceased;

ROBINSON, PATRICK, individually and as next of kin to BRANDY ROBINSON, deceased;

ROBINSON, SANDRA, individually and as next of kin to DANIELLE SCARBROUGH, deceased;

ROLLER, KAY, individually and as next of kin to CHARLES ROLLER, deceased;

ROSS, JAMES, individually and as next of kin to MARIE THORPE, deceased;

SAVAGE, BARBARA, individually and as next of kin to AMBERLEE KAE MURPHY, deceased;

SEALS, NONA, individually and as next of kin to CHARLES RAY SEALS, deceased;

SHEPPARD, WILLIAM, individually and as next of kin to EDDIE M. SHEPPARD, deceased;

SHERRY, MARGARET, individually and as next of kin to ANTHONY SHERRY, deceased;

SHORE, TAMMY, individually and as next of kin to MARK D. SHORE, deceased;

SIMONS, LINDA, individually and as next of kin to THOMAS SIMONS, deceased;

SNODGRASS, SUSAN, individually and as next of kin to FRANKLIN BAIR, deceased;

SNYDER, ANETRA, individually and as next of kin to ELIZABETH PIERCE, deceased;

STEWART, BARBARA, individually and as next of kin to TERRY W. STEWART SR., deceased;

STONE, GLADYS, individually and as next of kin to GILMER D. STONE, deceased;

1

ATTACHMENT TO CIVIL COVER SHEET

*ATL 18,835,107*

STRAUSS, ELISABETH, individually and as next of kin to CLARA HENDREN, deceased;

SUDDUTH, LINDA, individually and as next of kin to JAMES STEVENSON, deceased;

TAYLOR, MARGARET, individually and as next of kin to CHARLES E. TAYLOR, deceased;

TUOHY, SARAH, individually and as next of kin to SAMUEL WILLIS, deceased;

VANZYVERDEN, SHIRLEY, individually and as next of kin to JOHNNIE PAUL PARTIS, deceased;

WHITE, ARTHUR, individually and as next of kin to KAREN M. WHITE, deceased;

WHITE, DONNA, individually and as next of kin to EARL WHITE, deceased;

WHITE, SAMANTHA, individually and as next of kin to JAMES SHELTON, deceased;

WILLIAMS, KRISTEN, individually and as next of kin to CAROL ANTHONY, deceased;

WINNER, BILLIE JO, individually and as next of kin to BARBARA L. CLARK, deceased;

WINNER, BILLIE JO, individually and as next of kin to CARLTON J. CLARK, deceased;

WOMACK, PATRICIA, individually and as next of kin to CHAUNCEY WOMACK, deceased;

WOOD, LINDA, individually and as next of kin to THOMAS WOOD, deceased; and

YANCEY, SHEILA, individually and as next of kin to SARITA DURDEN, deceased

## Item I.(a) — Defendants

AAI DEVELOPMENT SERVICES, INC.
AAI PHARMA SERVICES, INC.
AAIPHARMA LLC
AAIPHARMA, INC.
BRENN DISTRIBUTION, INC.
BRENN MANUFACTURING, INC.
CORNERSTONE BIOPHARMA HOLDINGS, INC.
CORNERSTONE BIOPHARMA, INC.
CORNERSTONE PHARMACEUTICALS, INC.
COVIDIEN INC.
COVIDIEN PLC
ELI LILLY AND COMPANY
ENDO PHARMACEUTICALS HOLDINGS INC.
ENDO PHARMACEUTICALS, INC.

2

ATTACHMENT TO CIVIL COVER SHEET

ATL 18,835,107

GENERICS BIDCO I, LLC
GENERICS BIDCO II, LLC
GENERICS INTERNATIONAL (US PARENT), INC.
GENERICS INTERNATIONAL (US), INC.
MALLINCKRODT INC.
MCKESSON CORPORATION
MYLAN PHARMACEUTICALS, INC.
MYLAN, INC.
NEOSAN PHARMACEUTICALS INC.
PROPST DISTRIBUTION, INC.
QUALITEST PHARMACEUTICALS, INC.
TEVA BIOPHARMACEUTICALS, INC.
TEVA PHARMACEUTICALS USA, INC.
VINTAGE PHARMACEUTICALS, INC.
VINTAGE PHARMACEUTICALS, LLC
WATSON PHARMACEUTICALS, INC.
XANODYNE PHARMACEUTICALS, INC.

**Item I.(b) — Attorneys**

Attorneys for Plaintiffs

| J. Paul Sizemore | Matthew J. Sill |
|---|---|
| THE SIZEMORE LAW FIRM | SILL LAW GROUP PLLC |
| 2101 Rosecrans Ave., Suite 3290 | 14005 N. Eastern Ave. |
| El Segundo, CA 90245 | Edmond, OK 73103 |
| *Attorneys for Plaintiffs* | *Attorneys for Plaintiffs* |

ATTACHMENT TO CIVIL COVER SHEET
*ATL 18,835,107*